## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**COREY JEROME CARTER**                                                              **PLAINTIFF**

**v.**                              **CASE NO. 3:13CV00051 BSM**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                              **DEFENDANT**

## ORDER

Plaintiff Corey Jerome Carter appeals the final decision of the Commissioner of the

Social Security Administration denying his claim for disability insurance benefits and

supplemental security income.  The decision of the commissioner is affirmed and Carter's

complaint [Doc. No. 2] is dismissed with prejudice.

Carter seeks judicial review of the denial of his application for disability insurance

benefits and supplemental security income.  Carter claims he has been unable to work since

July 2007, when an 18-wheeler side-swiped him on the highway.  Prior to the motor vehicle

accident, Carter worked in the food service and construction industries.  In this case, his

second attempt for disability benefits, Carter maintains he cannot work due to head trauma;

headaches; his left leg, foot, and ankle; and back and neck problems.  Tr. 193.

**The Commissioner's decision**.  After considering Carter's application, the

Commissioner's ALJ determined Carter has severe impairments—history of multiple back

surgeries, history of ankle surgery, torn rotator cuff in the right shoulder, degenerative disc

disease, osteoarthritis, depression and anxiety—but he can do some light work.  Tr. 11-12.

Because a vocational expert identified available work, Tr. 52-53, the ALJ determined Carter

is not disabled under the Social Security Act and denied the application, Tr. 19.

After the Commissioner's Appeals Council denied a request for review, Tr. 1, the ALJ's decision became a final decision for judicial review, *Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992). Carter filed this case to challenge the decision. Doc. No. 2. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error. *See* 42 U.S.C. § 405(g); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). Because Carter's first application was denied on April 7, 2009, Tr. 189, this case considers whether Carter has been disabled beginning April 8, 2009, *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010).

**Carter's allegations of error**. In a tacky brief that called the hearing before the ALJ a kangaroo court and compared the ALJ's analysis to an Alice in Wonderland styled farce, Carter alleges that the ALJ's decision is unsupported by substantial evidence for the following reasons: (1) the ALJ erroneously rejected his doctor's statement about his ability to work, (2) the ALJ improperly evaluated his credibility, (3) the ALJ cherry-picked the medical evidence, and (4) the ALJ failed to show work exists that he can do, by omitting some of his limitations from the hypothetical question and relying on vocational expert testimony that conflicts with the Dictionary of Occupational Titles (DOT). Dkt. No. 10.

For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Carter can do some light work. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). "Light work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) & 416.967(b).  The ALJ reduced light work by the following limitations:  (1) occasional stooping and crouching;  (2) no overhead reaching;  and (3) work in which interpersonal contact is no more than superficial, tasks are learned and performed by rote with few variables and little judgment, and supervision is simple, direct and concrete.  Tr. 12.  The court must determine whether a reasonable mind would accept evidence as adequate to show Carter can work within these parameters.

Credibility.  Before determining a claimant's ability to work, the ALJ must evaluate the claimant's credibility.  *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).  Although Carter maintains the ALJ first determined his ability to work, Dkt. No. 10 at 8-9, the decision shows otherwise.  The ALJ followed the required two-step process and considered the required factors.  SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. Thus, the question before the court is whether substantial evidence supports the credibility evaluation.

An ALJ may discredit a claimant's credibility based on inconsistencies in the evidence.  *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011);  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The record includes numerous inconsistencies.  For example, Carter maintains his three sons live with him, Tr. 83, but he also reported that his sons live with their mother, Tr. 158, and that he watches his sons while the mother works, Tr. 612-13.

3

Carter attributes numerous injuries to the accident, but the record reflects no traumatic injuries. Carter maintains his right ankle was dislocated as a result of the accident, Tr. 317, 621, 634, 641, 772, 853, but contemporaneous diagnostic imaging shows intact bones and no fracture, Tr. 585. He also maintains his neck was broken, Tr. 634, 853, but contemporaneous diagnostic imaging shows an old trauma rather than a new fracture, Tr. 587. He attributes right shoulder pain to the accident, Tr. 772, but he did not complain about right shoulder pain until 14 months after the accident, Tr. 504. At that time, diagnostic imaging showed a normal shoulder. Tr. 505. If the right shoulder was injured during the accident, a reasonable mind would expect him to have complained earlier. Carter's personal injury lawsuit may have motivated his attributions, but his inconsistent reports weigh against his credibility in pursuing disability benefits. On the record as a whole, the evidence indicates Carter over-states his pain and limitation.

Evidence about back problems. Carter's most significant impairment is likely his back. Although a young man, age 34 at the time of his second application, his spine shows degenerative changes. Shortly after the accident, diagnostic imaging showed mild, stable degenerative changes in the low back with a herniated disc. Tr. 303, 305, 573. *See also* Tr. 270, 462, 506. "[T]he herniated material from a herniated disc can press directly on spinal "nerve roots or on the spinal cord, causing a shock-like pain (sciatica) down the legs, weakness, numbness, or problems with bowels, bladder, or sexual function." Jeffrey P. Larson, 3 The Gale Encyclopedia of Med. 2112 (4th ed.). Carter complained about these

symptoms.

In early 2009, Carter twice underwent back surgery for the herniated disc. Tr. 415, 355. There has been no recurrent herniation. Tr. 331, 625-26, 714. The prior back surgeries and the degenerative changes support Carter's complaints of back pain, but a reasonable mind would accept the evidence as adequate to support the ALJ's decision because there is no disc herniation, spinal stenosis, or neuroforaminal stenosis to cause the degree of pain Carter claims. Some of Carter's symptoms may be permanent, Tr. 625, but treatment by a pain specialist has made Carter's pain tolerable, Tr. 857. Rather than show Carter cannot work, the evidence supports the ALJ's limitation on stooping and crouching because those activities might aggravate Carter's pain. A reasonable mind would accept the evidence as adequate to show Carter can work within the ALJ's parameters.

Evidence about problems with the leg left. Carter's problems with the left leg and foot flowed from the herniated disc. The herniation caused pain that radiated down the left leg and into the left foot. Rebecca J. Frey, 4 The Gale Encyclopedia of Medicine 2645 (4th ed.) (herniated disc can pressure sciatic nerve causing back to radiate down leg). After back surgery, the radiating pain improved, Tr. 434, 330, but sensation in the left leg and foot diminished, Tr. 622, 656-57. From time to time, Carter experiences a shocking sensation in his left leg and toe. Although these symptoms may be permanent, Tr. 625, they do not prevent Carter from walking or standing, Tr. 622, 656, 811. He takes care of three children, albeit with more difficulty than some parents. A reasonable mind would accept the evidence

as adequate to show that problems with the left leg/foot do not prevent Carter from working.

Evidence about neck problems. Carter based disability, in part, on neck problems, but there is no medical evidence of neck problems. Diagnostic imaging of the neck is within normal limits. Tr. 712, 827. Neck examinations have been consistently normal — stable, good muscle strength, full range of motion. Tr. 622, 854, 857, 860, 869. A reasonable mind would accept the evidence as adequate to show that neck problems do not interfere with Carter's ability to work.

Head trauma and headaches. Carter may have suffered head trauma in July 2007, but there is no evidence of recent head trauma or the residuals of a remote head trauma. Computed tomography scanning of the head and brain have always been negative, to include the testing done because of the accident. Tr. 340, 495, 587, 827. The record includes a few complaints about headaches, Tr. 763, 765, 768, 811, but nothing suggests recurrent disabling headaches. A reasonable mind would accept the evidence as adequate to show that head trauma and headaches do not interfere with Carter's ability to work.

Evidence about the right ankle. After his second application for disability benefits, Carter developed problems with his right ankle. Tr. 230, 767, 769. In January 2011, diagnostic imaging showed a tear in the ligament on the outside of the ankle, Tr. 772-73. An orthopedic surgeon repaired the ligament in May 2011. Tr. 806. By August 2011, Carter was better, although still wearing a cast. Tr. 866. Carter's ankle surgery necessarily impaired his ability to walk temporarily, but no medical evidence suggests the surgery failed

to resolve Carter's right ankle problem.  A reasonable would accept the evidence as adequate to support the ALJ's decision because there's no evidence that the right ankle prevented walking or standing for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).

Evidence about right shoulder injury.  Carter did not base disability on his right shoulder, but he later complained about right shoulder pain.  Tr. 770.  Diagnostic imaging from January 2011 shows a small, incomplete tear in a rotator cuff tendon.  Tr. 756.  An injury to a rotator cuff tendon can make it difficult or painful to move the arm above the shoulder.  Minor tendon tears are treated by resting the shoulder, applying ice packs, and taking anti-inflammatory medication.  Ken R. Wells, 5 The Gale Encyclopedia of Med. 3818 (4th ed.).  Carter testified that he needs shoulder surgery, Tr. 34, but the record includes no recommendation for surgery.  To the extent the partial tear causes right shoulder pain, Tr. 46, 858, 868, the limitation on overhead reaching accounted for pain by eliminating the need to move the arm above the shoulder.  A reasonable mind would accept the evidence as adequate to show Carter can work within the defined parameters because the ALJ eliminated overhead reaching.

Mental impairment.  To a lesser extent, Carter bases disability on depression flowing from pain and physical impairment, and anxiety flowing from financial stress.  Tr. 46, 205, 230, 688.  During the mental diagnostic evaluation, he demonstrated the ability to interact with others, sustained cognitive efficiency, and persisted on evaluation tasks.  Tr. 691-92.

His anxiety and depression improved with treatment by his primary care physician and pain specialist.  Tr. 762, 858, 861, 865.  Before that treatment, two agency mental health experts opined that Carter can work in environments with limited interpersonal contact, where the complexity of tasks is learned and performed by rote with few variables and little judgment involved, and supervision is simple, direct and concrete.  Tr. 709, 722.  Because the ALJ included those limitations in Carter's ability to work, a reasonable mind would accept the evidence as adequate to support the ALJ's decision.

Opinion evidence.  Before the ankle surgery, two agency medical experts reviewed the medical evidence and opined that Carter can do light work with occasional stooping and crouching.  Tr. 648-55, 723.  The month before the hearing, Carter's primary care physician provided a contrary opinion, reporting that Carter is unable to work on a full-time basis and setting forth disabling functional limitations.  Tr. 872-75.  A treating physician's opinion is ordinarily entitled to special weight, but an ALJ may discount or even disregard an opinion lacking support.  *Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).  The ALJ in this case should have better explained why he discounted the physician's opinion, but no harm flowed from the ALJ's explanation, because medical evidence does not support the reported limitations.  The cited diagnostic imaging shows nothing preventing prolonged sitting, standing, or walking, or lifting of 10 pounds.  Tr. 872.  Recovering from ankle surgery temporarily impaired

standing, walking, and stair climbing, but no medical evidence supports limitations expected to last for a continuous 12 months.  The legible portions of the doctor's treatment notes document no disabling limitations. Tr. 761-70.  A reasonable mind would accept the agency medical opinions, and the ALJ's added limitations, as adequate to support the ALJ's decision.

Vocational expert testimony.  Because Carter can do less than the full range of light work, the ALJ questioned a vocational expert about available unskilled work using a hypothetical question that included no overhead reaching, occasional stooping and crouching, limited interpersonal contact, few variables, little judgment, and simple, direct concrete supervision.  Tr. 50.  Carter maintains the hypothetical question omitted some of his limitations, but his argument flows from his subjective allegations.  The record indicates Carter over-stated his limitations.  The ALJ's question was proper because it captured the concrete consequences of Carter's impairments. *Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006).

The expert identified two light work jobs and two sedentary jobs. Tr. 50-53.  Carter's attorney questioned the expert at length about the demands of each job. Tr. 54-81.  Perhaps because of that questioning, the ALJ relied on the sedentary jobs — surveillance system monitor and answering service — to meet the Commissioner's burden to show work exists that Carter can do.  The DOT descriptions of those jobs form the basis of Carter's arguments in this review.

Carter's arguments fail because the vocational expert explained why a hypothetical person can do the jobs as described in the DOT.  He explained that even though the DOT identifies a surveillance system monitor as working in government services, like jobs exist in the private sector.  Tr. 67.  He also explained that surveillance system monitors perform repetitive, short-cycle work, Tr. 68, sometimes observing in places like Wal-Mart or in casinos, Tr. 80.  He explained that the interpersonal skills for answering service jobs vary, Tr. 72-73, and that people working in those jobs respond in a short-cycle, repetitive manner, Tr. 72.

Not all of the jobs in a DOT job category require demands as rigorous as those listed in the DOT.  *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 366-67 (8th Cir. 2007).  To the extent the DOT's description remain relevant — last updated in 1991 — the vocational expert adequately explained why a person with Carter's abilities can work as a surveillance system monitor or in an answering service position, and why those jobs exist in significant numbers in the regional and national economies.  Despite his position now, Carter reported no difficulties interacting appropriating with others.  Tr. 689.  Because substantial evidence supports the ALJ's phrasing of the hypothetical question, and because the vocational expert reconciled the demands of a surveillance system monitor and an answering service position with the DOT descriptions, the ALJ properly relied on the expert's testimony.  *Moore*, 623 F.3d at 605.  A vocational expert's testimony answering a properly phrased hypothetical question constitutes

substantial evidence supporting the ALJ's decision. *Partee*, 638 F.3d at 865.

**Conclusion**.  Carter maintains the ALJ cherry-picked the evidence and engaged in Kangaroo Court, but the record shows the ALJ considered "all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Notwithstanding Carter's allegations, medical evidence supports the ALJ's determination about his ability to work.  *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).  Substantial evidence supports the ALJ's decision denying Carter's application because a reasonable mind would accept the evidence as adequate to show Carter can work within the defined parameters.  The ALJ made no legal error.  For these reasons, the court denies Carter's request for relief [Doc. No. 2] and affirms the decision denying the application.

IT IS SO ORDERED this 27th day of March 2014.

UNITED STATES DISTRICT JUDGE